[Cite as *In re T.J.T.P.*, 2019-Ohio-837.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

IN RE: T.J.T.P. AND M.A.M.P.      :      **O P I N I O N**

: 

     :      **CASE NOS. 2018-A-0042**
     :                     **2018-A-0043**

: 

Civil Appeals from the Ashtabula County Court of Common Pleas, Juvenile Division, Case Nos. 2016 JG 00042 and 2014 JG 00029.

Judgment: Affirmed.


*Tyler S.D. Payne*, pro se, PID# A651-250, Lake Erie Correctional Institution, P.O. Box 8000, 501 Thompson Road, Conneaut, OH 44030 (Appellant).

*Delores Sierra*, pro se, 5302 Stark Avenue, Ashtabula, OH 44004 (Appellee, custodian of T.J.T.P.).

*Leeann Koski*, pro se, 1001 West 34th Street, Ashtabula, OH 44004 (Appellee, custodian of M.A.M.P.).


MATT LYNCH, J.

{¶1} Defendant-appellant, Tyler Payne, appeals from the judgments of the Ashtabula County Court of Common Pleas, Juvenile Division, denying his motions for parenting time. The issue to be determined by this court is whether the trial court errs in failing to make explicit findings on an incarcerated parent's request for phone contact and other communication with his children. For the following reasons, we affirm the decision of the lower court.

{¶2} Payne is the father of two children, T.P., born on August 23, 2011, and

M.P., born on March 6, 2013. In 2013, Payne was convicted for crimes relating to the manufacture of drugs and was subsequently sentenced to a term of eight years in prison.

{¶3} On March 10, 2014, Leann Koski, M.P.'s godmother, requested temporary custody of her due to the incarceration of her father and upcoming incarceration of her mother, Vernotta Jimenez. A temporary order of placement was issued and on April 23, 2015, a Magistrate Decision was filed, finding that both parents were incarcerated and naming Koski as legal custodian of M.P., which decision was subsequently adopted by the trial court.

{¶4} On March 21, 2016, Delores Sierra, T.P.'s grandmother, sought legal custody of T.P., due to the parents' incarceration. Following a placement order, she was granted temporary custody by the trial court on March 17, 2017.

{¶5} Payne filed Motions to Establish Parenting/Companionship Time in each child's case on September 12 and 23, 2016. The Motions sought visitation in the form of two contact visits per month, two "parenting time calls" per week, and any other parenting time or communication deemed appropriate by the court.

{¶6} A hearing was held on the visitation motions on March 18, 2018. The following pertinent testimony was presented:

{¶7} Payne's family members, Marnita Loose, Pamela Payne, and Meghan Payne, testified that they had observed positive interactions between Payne and T.P. Both Marnita and Meghan explained that T.P. had indicated a continuing interest in visiting with his father. Meghan described T.P. as happy and well-behaved. Pamela, T.P.'s grandmother, testified that she had been prohibited from visiting T.P. by Sierra on some occasions due to his "bad behavior."

2

{¶8} Sierra indicated that T.P. suffers with medical and mental health concerns and she did not believe visitation with Payne was in his best interest.

{¶9} Koski testified that she did not believe it would be good for M.P. to visit Payne in prison and emphasized her general tendency to be "nervous." Koski testified that M.P. is presently "content."

{¶10} Payne testified that he loves his children, wants to be in their lives, and believed having them visit him would be beneficial. He indicated that he had not been able to contact M.P. since late 2014. During the hearing, Payne inquired about telephone contact with the children and the court indicated it would consider this request.

{¶11} The trial court issued Judgment Entries on April 11, 2018, denying the Motions to Establish Parenting/Companionship Time. As to both children, the court emphasized that case law supports a trial court's decision denying visitation to an incarcerated parent, that transporting a child to prison for visits "gives rise to an inference of harm," and concluded that "Father's incarceration constitutes * * * extraordinary circumstances permitting this Court to deny visitation." The court proceeded to conduct a review of the best interest factors under R.C. 3109.051(D), preceding such review with the following statement: "Having thoroughly reviewed the evidence presented, the Court finds that visitation at a state correctional facility under a court ordered schedule is not in the best interest of the child[ren]." Regarding T.P., the court found that he had previously visited Payne in prison but it was unclear whether he would be able to "adapt to resuming this relationship under these circumstances." As to M.P., the court found she had no relationship with Payne. In relation to both children, the court found that transportation and visitation times would not be an obstacle and

that the children lacked the age and maturity to express their wishes regarding visitation. However, it again emphasized the presumption of harm in them visiting a prison.

{¶12} Payne timely appeals and raises the following assignment of error:

{¶13} "The trial court erred by failing to address father's additional prayers for relief raised in his 'motion to establish parenting time.'"

{¶14} Payne argues that the trial court erred by failing to grant and specifically address his requests for parenting time through telephone calls, correspondence, and any other form of companionship.

{¶15} We review a trial court's visitation decision under an abuse of discretion standard. *In re K.S.*, 11th Dist. Ashtabula No. 2013-A-0054, 2014-Ohio-1347, ¶ 25. "An abuse of discretion is a term of art reflecting a court's exercise of judgment that fails to comport with the record or logic." *Albrecht v. Albrecht*, 11th Dist. Trumbull No. 2017-T-0064, 2018-Ohio-4664, ¶ 5. This standard has been found to be "particularly appropriate" in cases involving issues relating to the custody of and, by extension, visitation with children "since the trial judge is in the best position to determine the credibility of the witnesses and there 'may be much that is evident in the parties' demeanor and attitude that does not translate well to the record.'" (Citation omitted.) *In re A.M.*, 11th Dist. Trumbull No. 2016-T-0051, 2016-Ohio-8433, ¶ 23.

{¶16} Here, there is no question that the trial court found it was inappropriate and not in the children's best interest to visit Payne in prison, making findings regarding specific best interest factors. Payne does not dispute these findings. Rather, he argues that the court failed to make findings or issue a specific ruling on the other methods of visitation, also taking exception with the conclusion that the case law of this state does

4

or should support denial of all methods of visitation to an incarcerated parent.

{¶17} Regarding Payne's contention that the trial court did not make specific findings regarding the requests for communication outside of in-person visits, we find it lacks merit. It does appear that the trial court made no specific factual findings on that issue, although it ruled generally to deny the entire motion which included this request. Payne, however, did not seek findings of facts or conclusions of law on this issue following the trial court's issuance of the Judgment Entries ruling on his motions. Pursuant to Civ.R. 52, when questions of fact are tried before the court, a general judgment may be issued "unless one of the parties in writing requests otherwise * * * in which case, the court shall state in writing the findings of fact found separately from the conclusions of law." This principle applies to cases involving parental visitation. *Ramos v. Ramos*, 11th Dist. Ashtabula No. 97-A-0070, 1998 WL 683942, *2 (Sep. 30, 1998); *Reynolds v. Nibert*, 4th Dist. Scioto No. 01CA2771, 2002-Ohio-6133, ¶ 22. In *Ramos*, this court, in affirming the denial of the appellant's Motion to Demand Visitation and Communication Rights, rejected the appellant's arguments that the "trial court must consider all options available when considering visitation * * * [and] did not consider the best interest of the child." *Id.* at *2. It noted that the appellant had not timely filed a request for findings of fact and conclusions of law and held that, in the absence of such a request, "this court can only speculate on the reasons supporting the trial court's determination that appellant would not be granted visitation while incarcerated." *Id.* at *3.

{¶18} We also emphasize that while there are no specific factual findings as to the telephone or mail correspondence issue, the lower court expressed general concern about Payne's relationship with the children, finding he had no relationship with M.P.

5

and noting that T.P. presently has a sense of stability and "has adjusted to a world in which he is cared for day in and day out by Ms. Sierra." Although Payne did not seek factual findings, there were valid grounds to deny visitation including communication, an issue further supported by the presumption of harm found by the trial court and discussed in more detail below.

{¶19} Payne also argues that the trial court's denial of his motion in its entirety "was induced by [its] misinterpretation, misapplication, and its reliance on" precedent finding a presumption of harm in allowing prison visitation. We disagree.

{¶20} This court has been clear that "the volume of case law" supports a trial court's decision to deny visitation to an incarcerated parent. *In re D.J.M.*, 11th Dist. Lake No. 2011-L-022, 2011-Ohio-6836, ¶ 22, citing *Ramos*, 1998 WL 683942, at *2. "[A] child's visitation with an incarcerated parent is presumed not to be in a child's best interest." (Citation omitted.) *Id.* There is extensive case law from several districts throughout this state that have recognized the existence of this presumption, emphasizing the need to, first and foremost, consider the best interest of the children. *See Moore v. Moore,* 5th Dist. Licking No. 04CA111, 2005-Ohio-4151, ¶ 9; *Lowe v. Lowe*, 12th Dist. Fayette No. CA97-02-003, 1997 WL 349033, *1 (June 23, 1997); *In re Hall*, 65 Ohio App.3d 88, 91, 582 N.E.2d 1055 (10th Dist.1989).

{¶21} It has also been recognized that "[w]hile a nonresidential parent's right of visitation should be denied only when extraordinary circumstances exist, * * * imprisonment for a term of years is an extraordinary circumstance supporting a trial court's denial of visitation." *Ramos* at *2. "'[A]n incarcerated nonresidential parent bears the burden of demonstrating that visitation between the child and parent at the place of incarceration is in the child's best interest.'" *D.J.M.* at ¶ 22, citing *Simms v.*

6

*Simms*, 11th Dist. Portage No. 97-P-0005, 1998 WL 156886, *6 (Mar. 27, 1998).

{¶22} While much of the case law relating to the issue of visitation of incarcerated individuals addresses the harm that may be caused to children by physically visiting the parent within the prison, this court has applied the foregoing analysis in a set of circumstances similar to those present in this case. In *Ramos*, an incarcerated father filed a Motion to Demand Visitation and Communication Rights, requesting "reasonable visitation and mutual communication with his child." The trial court denied that motion in its entirety on the ground that "appellant's inability to exercise visitation resulted from his incarceration." *Ramos* at *1. On appeal, this court found the foregoing analysis applicable and upheld the court's order, emphasizing the case law from various districts that visitation is presumed against a child's best interest when the parent is incarcerated. *Id.* at *2. Thus, the lower court's application and discussion of the foregoing law has been applied to cases involving more than in person contact. There are certainly valid reasons to extend the presumption to other types of contact since there may be concerns about inconsistent or limited communication while calling from prison and a lack of stability or confusion, especially with young children.

{¶23} While Payne argues that the foregoing law is "antiquated," he fails to demonstrate what has changed since 2011 that would warrant this court altering its analysis from that contained in *D.J.M., supra*. Further, although Payne cites *Tramontana v. Thacker*, 3d Dist. Marion No. 9-15-33, 2016-Ohio-862, in support of his contention that communication between an incarcerated parent and a child is warranted and beneficial, this case is distinguishable. In *Tramontana*, while the trial court found that a relationship should be established since the father would be released from prison within 18 months, the appellate court simply held that it "cannot find" that the trial court's

7

plan allowing gradual introduction of the child into his life through communication was an abuse of discretion. *Id.* at ¶ 16. It did not make any findings regarding the presumption discussed above or that a trial court is required to permit communication between a child and an incarcerated parent.

{¶24} Consistent with this court's prior precedent, Payne's failure to request findings of facts for the denial of his request for phone communication, when "coupled with ample case law holding that an incarcerated parent may be denied visitation when sentenced to a term of years" and his lengthy prison sentence, Payne has failed to demonstrate that the trial court's ruling was an abuse of discretion. *Ramos* at *3.

{¶25} The sole assignment of error is without merit.

{¶26} Based on the foregoing, the judgments of the Ashtabula County Court of Common Pleas, Juvenile Division, denying Payne's motions for parenting time, are affirmed. Costs to be taxed against appellant.


THOMAS R. WRIGHT, P.J.,

MARY JANE TRAPP, J.,

concur.